MELCHOR B. CRISTOBAL AND NADINE A. CRISTOBAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cristobal v. Commissioner
Docket No. 17838-80.
United States Tax Court
T.C. Memo 1982-522; 1982 Tax Ct. Memo LEXIS 232; 44 T.C.M. (CCH) 1095; T.C.M. (RIA) 82522; September 13, 1982. Lonnie G. McGee, for the petitioners. Kevin M. Bagley, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code *233 of 1954 and Rule 180. [1] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. [2]
OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1978 in the amount of $800.00. By the express consent of the parties pursuant to Rule 41(b), the issues for decision are: (1) whether under section 162 petitioners are entitled to deduct expenses incurred in traveling between petitioner-husband's residence and his place of work; and (2) whether the travel pay received by petitioner-husband is includable in his gross income. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits *234 are incorporated herein by reference. Petitioners resided in San Diego, California, when the petition in this case was filed. Petitioner Melchor B. Cristobal (petitioner) is a sheet metal worker and a member of the Sheet Metal Workers Local Union 206 (union) in San Diego, California. Petitioner was employed as a sheet metal worker by University Mechanical and Engineering Contractors (University) for the period from May, 1977 through November, 1978 at the San Onofre Nuclear Generating Station (SONGS). Petitioner secured his employment through his union. Bechtel Power Corporation (Bechtel) had contracted with Southern California Edison to construct two nuclear reactor facilities (Units 2 and 3) at the SONGS site in February 1974. Construction actually began in May 1974. As of the time of trial, Bechtel's construction work on Units 2 and 3 had not yet been completed. University contracted with Southern California Edison in May 1975 to perform certain work at the SONGS site. University was to perform certain design parameters, purchase certain equipment, fabricate duct work, and erect and test the finished product. University's contract provided that this construction was *235 originally designed to be completed on both Units 2 and 3 on April 3, 1978, but this time of completion had to be periodically updated. In addition, University was awarded additional work upon the dismissal of other contractors. At the time of trial, this work had not been completed although University's work on Unit 2 was almost finished and most of University's work was being performed on Unit 3. Bechtel managed the contract between University and Southern California Edison. Bechtel also monitored the number of people University had on the job site and controlled the work force in terms of deciding how many people University was to hire or fire. Sheet metal workers comprised most of University's work force at SONGS. When University required sheet metal workers, an officer of University would contact a representative of the union and request that a certain number of workers be dispatched to the SONGS site. These employees were hired by University on an "as needed" basis. Such an employee could lose his job at the SONGS site by a layoff pursuant to a reduction-in-force, by being terminated for cause, or by a voluntary termination. The decision to lay off any given employee *236 pursuant to a reduction-in-force apparently was based on criteria established by Bechtel. In making layoffs, University considered the job performance of any given employee as the most critical factor in determining whether that employee would be laid off. In short, the worst workers would be laid off first and the better workers would be laid off last. In determining which employees would be laid off and which would stay, no consideration was given to the employee's union seniority. When petitioner was hired to work at the SONGS site, he was told by a union representative that University needed a man up at the power plant for a couple of weeks. He actually worked for University for almost 19 months at the SONGS site. An official of petitioner's union acknowledged that the union had never dispatched workers to a project similar in duration to the one at SONGS and that SONGS was unusual in duration when compared to other jobs. A sheet metal worker, such as petitioner, could expect to be employed at the SONGS site by University as long as work was available and as long as the employee maintained a good job performance. During the entire period of petitioner's employment, University *237 had substantial actual labor requirements for sheet metal workers. Petitioner was a good sheet metal worker. University highly regarded petitioner's job performance as a sheet metal worker as indicated by the fact that he was never laid off. His termination in November 1978 was voluntary. He quit because he expected to be laid off. University's needs for sheet metal workers dropped substantially in 1979. Pursuant to the union agreement under which petitioner was employed at the SONGS site, petitioner was entitled to $16.00 in travel pay for each day he worked. The amount was based on the distance from the job site to University's business office in San Diego. Petitioner would have received the same amount of travel pay regardless of where he actually resided. During 1978, petitioner resided 51 miles from the SONGS site. He received travel pay from University in the amount of $2,930.00 and this amount was reported as income on his 1978 Federal income tax return. Petitioner incurred $3,253.00 in expenses in traveling to and from the job site during 1978. On his return, petitioner claimed an adjustment to income of $3,251.00 as employee business travel expense for automobile *238 expenses incurred in traveling between his residence and the SONGS site. [3]
Respondent disallowed the $3,251.00 claimed as a travel expenses deduction on the basis that it was commuting expenses which is a nondeductible personal expense under section 262. An automatic sales tax deduction adjustment favoring petitioner also was made by respondent. OPINION The essential facts herein do not differ from those in Portillo v. Commissioner,T.C. Memo. 1982-518, issued on the same day that this opinion was issued, although there are some differences in the details. The most significant difference is that in 1977 petitioner was advised initially that the SONGS job was one for a couple of weeks. Nevertheless, he was employed at SONGS for almost 19 months. Whatever his status was when he began work at SONGS in 1977, with the passage of time there was a reasonable probability known to petitioner that his employment would continue for an indefinite or substantially long period of time. Doyle v. Commissioner,354 F.2d 480 (9th Cir. 1966), *239 affg. T.C. Memo. 1964-110; see Hazelton v. Commissioner,T.C. Memo. 1982-238. The fact that he quit to avoid being laid off sometime soon thereafter does not change the length of his actual employment. We are satisfied that for the reasons set forth in Portillo v. Commissioner,supra, petitioner is not entitled to deduct his daily travel expenses under section 162 and is required, as he did, to report his travel pay in his income under section 61. Accordingly, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable year, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. The record fails to disclose why there is a $2.00 difference between actual and deducted travel expense.↩